UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRANDY HURD, a minor by and through her legal representative IVAN HURD, ) ) ) | 1:04cv5560 DLB |
| Plaintiff, ) ) ) | ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (Document 18) |
| v. ) | |
| JULIE HANSEN, TOM BATES, ) ) ) ) | ORDER DIRECTING CLERK TO ENTER JUDGMENT IN FAVOR OF DEFENDANTS |
| Defendants. ) ) | |

Defendants Julie Hansen and Tom Bates (collectively "Defendants") filed the instant motion for summary judgment on February 22, 2005. Pursuant to Local Rule 78-230(h), the matter was taken under submission by the Honorable Dennis L. Beck, United States Magistrate Judge. The parties have consented to the jurisdiction of the Magistrate Judge.

**BACKGROUND**

Plaintiff Brandy Hurd, by and through her legal representative Ivan Hurd, ("Plaintiff"), filed her first amended complaint on April 24, 2004. The first cause of action alleges a violation of 42 U.S.C. § 1983 based on her grade of "C" in Physical Education during the fourth quarter of her seventh grade year. According to the first amended complaint, the class focused on track and field events. First Amended Complaint, at ¶ 5. Specifically, she alleges that she received this grade because of her race (African-American), in violation of her substantive due process right to a fair educational assessment and her right to equal protection. She requests compensatory and

punitive damages. Plaintiff alleges a second cause of action for declaratory relief and requests that her grade be expunged and replaced with one that "truly reflects her performance in the track and field class." First Amended Complaint, at 4. Plaintiff names her Physical Education Teacher Julie Hansen ("Hansen") and the Superintendent of the Island Union School District Tom Bates ("Bates") as Defendants.

Defendants filed the instant motion for summary judgment on February 22, 2005, arguing that they are entitled to summary judgment on the following grounds:

1. School grading does not invoke substantive due process concerns;

2. Even if it does, the undisputed facts establish no possible violation of substantive due process because there was no arbitrary or capricious action;

3. Even if such a claim exists, it is barred because adequate state remedies exist;

4. The undisputed facts establish that Plaintiff was not differentially treated due to her race;

5. Bates is entitled to qualified immunity; and

6. The claim is frivolous as a matter of law.

Plaintiff filed her opposition on April 8, 2005.

Defendants filed their reply on April 18, 2005.

**UNDISPUTED MATERIAL FACTS**

Plaintiff attended the Island Elementary School from kindergarten through eighth grade, and during these nine years, she was an honor roll student. Declaration of Brandy Hurd ("B. Hurd Dec."), ¶ 2. She has received numerous awards, both for her academic performance and her athletic performance. B. Hurd Dec., ¶ 2.

During the fourth quarter of the 2002-2003 school year, Plaintiff and three other girls received a "C" in seventh grade Physical Education. Declaration of Julie Hansen ("Hansen Dec."), ¶ 4. Of these four girls, Plaintiff and another were African-American and the other two girls were Caucasian. Hansen Dec., ¶ 10. Physical Education classes at Island Union School District are graded based upon effort and attitude only, not upon athletic ability. Declaration of Tom Bates ("Bates Dec."), ¶ 3; Hansen Dec., ¶ 5. This fact is specifically stated on the report

cards. Bates Dec., ¶ 3; Hansen Dec., ¶ 5. Factors taken into account are how hard the student tries, how cooperative the student is, and the degree of leadership shown by the student. Bates Dec., ¶ 3. Because the physical education grade is not based on skill, it is not included when calculating the students' grade point average for placement on the honor roll. Bates Dec., ¶ 4.

Bates first became aware that a dispute existed regarding Plaintiff's grade when he received a letter from Plaintiff's father, Ivan Hurd, dated July 10, 2003. Bates Dec., ¶ 5, and Exhibit 1. By letter dated July 24, 2003, Bates responded to Mr. Hurd's letter. Bates Dec., ¶ 5, and Exhibit 2. Before responding to the letter, he tried to speak with Ms. Hansen. However, she was unavailable; to the best of his recollection she was on vacation. Since Bates wanted to respond promptly to Mr. Hurd's letter, he did so even though he did not have an opportunity to speak to Ms. Hansen about the issues. The letter explained that Bates learned that, in the judgment of the coaches, Plaintiff's effort and attitude during Physical Education class time was poor and that was the reason for the "C" grade. Bates Dec., ¶ 5, and Exhibit 2. He also confirmed that Ms. Hansen referred to these four girls as "bitches" and stated that she wanted to "wring their necks." Exhibit 2, attached to Bates Dec., Declaration of Ivan Hurd ("I. Hurd Dec."), ¶ 5.

Bates' next involvement was when he received a letter from attorney Kevin G. Little dated August 8, 2003. Bates did not respond directly to Mr. Little's letter; instead he sent it to Island Union School District's general counsel, Mary Beth de Goede, and requested that she respond. Bates Dec., ¶ 6, and Exhibit 3.

De Goede prepared and sent Mr. Little her letter dated August 20, 2003, and invited Mr. Little to contact her if he had any questions or additional information. She did not hear from him regarding the matter. Declaration of Mary Beth de Goede ("de Goede Dec."), ¶ 3, and Exhibit 4.

After Ms. de Goede responded to Mr. Little's letter, Bates heard nothing further on the issue until the lawsuit was filed. Neither Mr. Hurd nor his attorney at any time requested a hearing before the School Board. Bates Dec., ¶ 9.

There are statutory procedures for a parent to request a grade change. Island Union School District's Administrative Regulation 5125(g) incorporates the provisions of the Education

1  Code regarding grade change requests and hearings.  Bates Dec., ¶ 7, and Exhibit 5.

**DISCUSSION**

A.    <u>Summary Judgment Standard</u>

     Summary judgment is appropriate where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(c); <u>Hanon v. Dataproducts Corp.</u>, 976 F.2d 497, 500 (9th Cir. 1992).  The evidence of a party opposing summary judgment is believed and all reasonable inferences that may be drawn from the facts must be drawn in favor of the opposing party.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 255, 106 S.Ct. 2505 (1986).  To establish a factual dispute, the opposing party may not rely on mere allegations or denials of an adverse parties' pleadings and is required to tender evidence of specific facts in the form of affidavits or admissible discovery material in support of its contention that the dispute exists.

B.    <u>Plaintiff's Substantive Due Process Claim</u>

     1.    Existence of Substantive Due Process Claim

     Defendants first argue that there are no substantive due process rights in reference to school grading and that Plaintiff's claim must fail as a matter of law.  Plaintiff contends that the Supreme Court has recognized a substantive due process right to a fair academic assessment.

     Both Defendants and Plaintiff cite the Supreme Court case of <u>Board of Curators, Univ. of Missouri v. Horowitz</u>, 435 U.S. 78, 87, n. 4 (1978), yet the parties read the case quite differently.  In <u>Horowitz</u>, a former medical student was dismissed for failure to meet academic standards and sued under 42 U.S.C. § 1983, alleging that she was not provided due process prior to her dismissal.  In distinguishing the due process rights attached to dismissals for academic reasons versus dismissals for disciplinary reasons, the court explained that "[a]cademic evaluations of a student, in contrast to disciplinary determinations, bear little resemblance to the judicial and administrative fact-finding proceedings to which we have traditionally attached a full-hearing requirement."  <u>Id</u>. at 89.  "Like the decision of an individual professor as to the proper grade for a student in his course, the determination whether to dismiss a student for academic reasons requires an expert evaluation of cumulative information and is not readily adapted to the

procedural tools of judicial or administrative decisionmaking." Id. The court concluded that due process did not require a hearing for academic dismissals. Id. at 90.

While Defendants cite Horowitz and several other cases for the proposition that schools are not subject to supervision or review of the courts in a uniform application of their academic standards, Plaintiff contends that Horowitz and the Supreme Court case of Regents of the Univ. of Michigan v. Ewing, 474 U.S. 214, 225 (1985), stand for the proposition that substantive due process prevents the rendering of public academic assessments which are "such a substantial departure from accepted academic norms as to demonstrate that the person or committee responsible did not actually exercise professional judgment." Ewing, 474 U.S. at 225.

Despite Plaintiff's argument, the Supreme Court has not found a substantive due process right beyond the right to an education. Indeed, each case cited by the parties discusses a substantive due process interest within the realm of academic *dismissals.* Although most courts first recognize the broad discretion given to public institutions in evaluating the academic performance of its students, the courts go on to determine whether the student was afforded due process when *dismissed.* See eg., Regents of the Univ. of Michigan v. Ewing, 474 U.S. 214, 225 (1985); Board of Curators, Univ. of Missouri v. Horowitz, 435 U.S. 78 (1978); Greenhill v. Bailey, 519 F.2d 5 (8th Cir. 1975); Allen v. Temple Univ., 1996 WL 547213 (E.D. Pa. 1996).

The protection from governmental action provided by substantive due process "has most often been reserved for the vindication of fundamental rights." Halverson v. Skagit County, 42 F.3d 1257 (9th Cir. 1994) (citing Albright v. Oliver, 510 U.S. 266 (1994)). At best, the Supreme Court has recognized a fundamental right to an education, nothing more. It certainly has not recognized a fundamental right such as the one Plaintiff asserts here- the right to a particular grade. Plaintiff's argument becomes even weaker when the lack of consequences resulting from the "C" grade is taken into account. The grade is not computed in her grade point average and therefore won't harm her academic future. Indeed, this was a grade given in *seventh grade physical education class.* While Plaintiff may be understandably upset with her grade, and argues that it is maintained on her transcript and therefore reviewable by third parties, this does not change the fact that the grade has little, if any, impact on her continued education and/or

5

academic future.

Accordingly, there is no fundamental right to receive a particular grade, and therefore no resulting substantive due process protections.

### 2. Adequacy of State Remedies

In addition to arguing that case law does not support Plaintiff's claim, Defendants further argue that a substantive due process right does not exist because state law remedies are adequate. Plaintiff contends that exhaustion of remedies is not required to state a claim under 42 U.S.C. § 1983.

While Plaintiff is correct that exhaustion is not required to state a civil rights claim pursuant to section 1983, the Ninth Circuit follows the rule that where a plaintiff's substantive due process claim is based on deprivation of a state created property interest and not on a separate constitutional violation, no federal claim exists unless state law remedies are inadequate. Kauth v. Hartford Ins. Co. of Illinois, 852 F.2d 951, 956-959 (7th Cir. 1988); Halverson v. Skagit County, 42 F.3d 1257, 1262-1263 (9th Cir. 1994).

Here, the Island School District has incorporated the sections of the California Education Code setting forth the procedure for challenging student records. Bates Dec., ¶ 7, and Exhibit 5. California Education Code section 49070(a) allows a parent to file a written request that the superintendent correct the record. If the superintendent denies any of the allegations and refuses to correct the record, the parent may, within 30 days, appeal the decision in writing to the governing board. Cal. Educ. Code § 49070(c). Before any grade is changed by either the superintendent or the board, the teacher who gave the grade shall be given the opportunity to state why the grade was given, and shall be, the extent practicable, included in all discussions related to the grade change. Cal. Educ. Code § 49066(b). The results of these proceedings can be challenged in state court by way of a petition for writ of administrative mandamus. See eg. Johnson v. Board of Education, 179 Cal.App.3d 593 (1986).

Pursuant to California Education Code sections 49070 and 49066, the state has provided an adequate state remedy for challenging Plaintiff's grade. Accordingly, a substantive due process right does not exist where state remedies are adequate. Plaintiff has not availed herself

of this remedy and may not now argue that her due process rights have been violated.

C.      Plaintiff's Equal Protection Claim

Defendants do not dispute that racially motivated grading is potentially actionable. However, Defendants contend that Plaintiff has failed to demonstrate that her grade was racially motivated.

To succeed on a equal protection claim brought pursuant to 42 U.S.C. § 1983, Plaintiff must prove that the defendants acted in a discriminatory manner and that the discrimination was intentional. Reese v. Jefferson School Dist. No. 14J, 208 F.3d 736, 740 (9th Cir. 2000); Barren v. Harrington, 152 F.3d 1193, 1194 (9th Cir. 1998); Federal Deposit Ins. Corp. v. Henderson, 940 F.2d 465, 471 (9th Cir. 1991); Lowe v. City of Monrovia, 775 F.2d 998, 1010 (9th Cir. 1985). "A plaintiff must allege facts, not simply conclusions, that show that an individual was personally involved in the deprivation of his civil rights." Barren, 152 F.3d at 1194.

In support of her claim of racial discrimination, Plaintiff argues that two of the three African-American students in her physical education class received a "C" "on the false basis that they were not cooperating and demonstrated a lack of effort." Opposition, at 11. Plaintiff points to the statistic that African-American students received 50% of the "C" grades given in Ms. Hansen's seventh grade physical education class, though they comprised just 23% of the class. Plaintiff also argues that Ms. Hansen "conjured a false motive for this belatedly alleged misconduct, i.e., a dispute with Jordan Johnson that never occurred." Opposition, at 11. She points to evidence that demonstrates that there was no dispute, that Plaintiff always followed directions and gave her best effort, that she always performed well in physical education, that she was never told that she was misbehaving or giving a subpar effort, and that she only received positive comments from Ms. Hansen. Plaintiff also points to Ms. Hansen's comments that Plaintiff and a few other students were "bitches" and that she wanted to "wring their necks." Opposition, at 11.

Plaintiff asserts that the statistical disparity, in conjunction with the evidence of pretext, provides sufficient evidence to allow her equal protection claim to go to trial. The Court disagrees. Plaintiff points to nothing to demonstrate that Ms. Hansen gave her a "C" grade

because of her race.  Plaintiff's statistical evidence is unavailing.  To the contrary, the undisputed evidence shows that of the four girls who received a C, two were African-American and two were Caucasian.  Hansen Dec., ¶ 10.  Plaintiff's evidence intended to dispute Defendants' reason for the grade is irrelevant because Plaintiff has failed to carry her initial burden of providing evidence of racial discrimination.  Finally, Ms. Hansen's comments, although not proper in a school setting, are certainly not indicative of racial discrimination.  Again, the comments were aimed at four girls, two of whom were Caucasian.  Plaintiff has therefore failed to demonstrate evidence to support an equal protection claim.

Defendants are entitled to summary judgment.  The Court will therefore not address Defendants' arguments regarding qualified immunity or frivolity.

Accordingly, IT IS HEREBY ORDERED that:

1. Defendants' Motion for Summary Judgment is GRANTED;

2. The Clerk of Court is DIRECTED to enter judgment in favor of Defendants and against Plaintiff.  This terminates this action in its entirety.

IT IS SO ORDERED.

**Dated:   April 28, 2005**           _____/s/ Dennis L. Beck_____
3b142a                                             UNITED STATES MAGISTRATE JUDGE